UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ   07101-0419
(973) 645-6340



**WILLIAM J. MARTINI**
**JUDGE**

**LETTER OPINION**

November 30, 2010

James Langton
Langton & Alter, Esqs.
2096 St. Georges Avenue
P.O. Box 1798
Rahway, NJ 07065
   *(Attorneys for Plaintiff)*

Ellen E. Sovern
Maria Pia Fragassi-Santangelo
Office of the U.S. Attorney
26 Federal Plaza, Room 3904
New York, NY 10278
   *(Attorneys for Defendant)*

   RE:   *Kracht v. Commissioner of Social Security*
         Civil Action No. 2:09-cv-06010 (WJM)

Dear Counsel:

   Plaintiff Richard Kracht ("Kracht") brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, seeking review of a final determination by the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI").   There was no oral argument.   Fed. R. Civ. P. 78. For the following reasons, the Commissioner's decision is **AFFIRMED**.

**I.**   **BACKGROUND AND PROCEDURAL HISTORY**
   Plaintiff is a forty-two year old male who claims to suffer from severe psychiatric

1

and psychological conditions with a history of substance abuse. (Administrative Transcript, hereinafter "Tr.," at 19-20, 218, 222). He was born in New Jersey and currently lives in Edison with his parents. (Tr. at 12). He has not worked since 2005 and is supported by his parents. (Tr. at 19, 432). Although Plaintiff performs minor chores around the house, maintains his room, and cooks infrequently, he relies heavily on his parents to perform the majority of the household tasks. (Tr. at 24, 113-17). He strongly dislikes being in public places and can grow anxious about leaving the house, taking out the trash, or showering. (Tr. at 20, 444-46). Plaintiff self-medicates by drinking several 24 ounce cans of beer throughout the week, whenever he feels anxious. (Tr. at 20-21). He has a history of hard drug usage, including cocaine, marijuana, ecstasy, mushrooms, PCP, and peyote, but he has refrained from using illegal drugs since the late 1990s. (Tr. at 20, 201-02).

     Plaintiff filed an application for SSI on June 24, 2005, alleging disability since that date. (Tr. at 16, 66, 78-80). The claim was denied both initially and upon reconsideration. (Tr. at 16, 40, 44). Subsequently, Plaintiff filed a request for a hearing, which took place on January 3, 2008 before Administrative Law Judge ("ALJ") James Andres in Newark. (Tr. at 16, 56). On April 8, 2008, Plaintiff's application was denied by the ALJ. (Tr. at 16). On August 18, 2008, Plaintiff obtained a review of the matter by the Appeals Council, who vacated the hearing decision and remanded the matter to the ALJ for a new hearing. (Tr. at 16). On April 2, 2009, the case again appeared before ALJ Andres, who denied Plaintiff's petition on April 30, 2009. (Tr. at 16, 30). Plaintiff subsequently sought review by the Appeals Council, but it found no grounds on which to review the matter and denied Plaintiff's claim. (Tr. at 6-8). Thereafter, Plaintiff commenced this action in the district court. (Plaintiff's Brief, hereinafter "Pl. Br.," at 1).

     The ALJ reviewed Kracht's medical records during the course of his analysis. (Tr. at 19, 23-26). Dr. Carmencita T. Lanez ("Dr. Lanez"), Plaintiff's treating psychiatrist since October of 1999, diagnosed him with symptoms of an anxious and depressed mood. (Tr. at 16, 222-25). She prescribed psychotherapy and pharmacotherapy, consisting of one psychiatric session every three to six months and samples of Effexor XR and Xanax. (Tr. at 16, 446-447). Dr. Lanez opined that Plaintiff was unable to work due to his poor ability to adjust to a job, recurring panic attacks, and agoraphobia. (Tr. at 166-71, 286). She also stated that Plaintiff had been sober for several years since November 2000, although this account is disputed several times throughout the record. (Tr. at 26, 29, 222). Furthermore, Dr. Lanez failed to provide any recent treatment records for the ALJ's consideration. (Tr. at 30).

     Plaintiff also had a consultative examination with Dr. Jan S. Cavanaugh ("Dr. Cavanaugh") and a mental residual functional capacity assessment by Dr. G. Kleinerman ("Dr. Kleinerman"). (Tr. at 24-25). Dr. Cavanaugh found Plaintiff to be appropriately dressed, with fluent speech intelligibility and coherent thought processes. However, Dr. Cavanaugh also found Plaintiff to be highly anxious with mildly impaired attention and concentration faculties. He diagnosed Plaintiff with panic disorder, agoraphobia, and drug abuse in full remission. He concluded that Plaintiff's psychiatric problems may

significantly interfere with his ability to function on a daily basis. (Tr. at 155-56). Dr. Kleinerman reported that Plaintiff had "slight" restriction of daily living activities and difficulties in maintaining social functioning. Furthermore, Plaintiff "often" had deficiencies in maintaining concentration, persistence, or pace. However, Dr. Kleinerman concluded that there was "insufficient evidence" to prove that Plaintiff's psychiatric issues resulted in extended episodes of deterioration. (Tr. at 158-60, 194-95). Dr. Thomas Harding ("Dr. Harding"), a state agency psychologist, subsequently reviewed all the evidence in the file and affirmed Dr. Kleinerman's assessment. (Tr. at160).

On November 7, 2008, Plaintiff was admitted to the University of Medicine and Dentistry of New Jersey ("UMDNJ") for suicidal ideation and alcohol intoxication. (Tr. at 304, 312-13). Plaintiff reportedly pulled a knife out in front of his mother and threatened suicide. (Tr. at 312-13). He was heavily intoxicated throughout the episode. (Tr. at 289). While undergoing a nursing assessment at UMDNJ on November 7, 2008, Plaintiff reported daily drinking and slight abuse of his Xanax prescription. (Tr. at 289). After spending several days in a detoxification ward, he was diagnosed with major depressive disorder, recurrent, unspecified; alcohol dependence, unspecified; and anxiety disorder. Plaintiff was released on November 13, 2008, and his caretakers noted that he was able to relate well and that his condition had improved since he ceased his alcohol consumption. (Tr. at 26, 321-23).

ALJ Andres evaluated the evidence and testimony according to the five step sequential evaluation process promulgated by the Social Security Administration pursuant to 20 CFR 416.920(a). (Tr. at 17-18, 27-33). As part of this process, the ALJ questioned vocational expert ("VE") Pat Green ("Green") regarding the work prospects of a hypothetical individual with the Plaintiff's disabilities. The ALJ noted that this individual had the residual functional capacity to perform work with no physical limitations but had moderate limitations in his ability to interact appropriately with the public, respond to changes in the work setting, travel in unfamiliar places, or use public transportation. (Tr. at 31, 401-10).

On April 30, 2009, the ALJ held that Kracht was not disabled as defined by 20 C.F.R. §§ 416.905 and 416.920(g). (Tr. at 33). Specifically, the ALJ determined the following: (1) Plaintiff had not engaged in substantial gainful activity since June 24, 2005, (2) he has severe impairments which include depression, panic disorder with agoraphobia, and alcohol abuse, (3) Plaintiff's impairments, including the substance abuse disorder, meet sections 12.04, 12.06, and 12.09 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR § 416.920(d)), (4) if the Plaintiff stopped the substance abuse, the remaining limitations would continue to produce a severe impairment or combination of impairments, (5) if the Plaintiff stopped the substance abuse, his impairments would not meet any of the impairments listed in the C.F.R.,[1] (6) if the Plaintiff stopped the substance abuse, he would have the residual functional capacity to perform heavy work as defined in the C.F.R., (7) and jobs that Kracht could perform exist in significant numbers in the economy. (Tr. at

---

[1] This is because a substance abuse problem is relevant only if the ALJ finds that the claimant has another disability; substance abuse does not qualify as a disability under the statute on its own. 20 CFR. § 416.935.

27-29, 31-33).

Kracht requested review of the ALJ's decision by the Appeals council. (Tr. at 6-8). On October 5, 2009, the Appeals Council denied Kracht's request. (Tr. at 8). Thereafter, Plaintiff timely commenced this action in the District Court. (Pl. Br. at 1). Kracht alleges that the ALJ made the following errors when denying his claim: (1) the ALJ's findings lacked a scientific basis and (2) the ALJ failed to carry the burden of proof at both the third and fifth step of the sequential disability evaluation. (Pl. Br. at 14, 22). These arguments will be addressed in turn.

## II.   STANDARD OF REVIEW

At the administrative level, a five step process is used to determine whether an applicant is entitled to benefits. 20 C.F.R. §§ 404.1520, 416.920. In the first step, the ALJ determines whether the claimant has engaged in substantial gainful activity since the onset date of the alleged disability. *Id.* at §§ 404.1520(b), 416.920(b). If not, the ALJ moves to Step Two to determine if the claimant's alleged impairments qualify as "severe." *Id.* at §§ 404.1520(c), 416.920(c). If the claimant has a severe impairment or impairments, the ALJ inquires in Step Three as to whether the impairment or impairments meet or equal the criteria of any impairment found in the C.F.R.'s Listing of Impairments. 20 C.F.R. Part 404, Subpart P, Appendix 1, Part A. If so, the claimant is deemed disabled *per se* and the inquiry ends; if not, the ALJ moves on to Step Four. *Id.* at §§ 404.1520(d), 416.920(d). In the fourth step, the ALJ decides whether, despite any severe impairment(s), the claimant retains the residual functional capacity ("RFC") to perform past relevant work. *Id.* at §§ 404.1520(e)-(f), 416.920(e)-(f). The claimant bears the burden of proof at each of these first four steps. At Step Five, the burden shifts to the Social Security Administration to demonstrate that the claimant is capable of performing other jobs that exist in significant numbers in the national economy in light of the claimant's age, education, work experience, and RFC. 20 C.F.R. §§ 404.1520(g), 416.920(g); *see Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 91-92 (3d Cir. 2007) (citations omitted).

The district court reviews the ALJ's application of the law *de novo*. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1191 (3d Cir. 1986). At the same time, factual findings are reviewed to determine whether they are supported by substantial evidence. *See Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). When substantial evidence for an ALJ's factual findings exists, this Court is bound by those determinations of the ALJ. *See id.* (citing 42 U.S.C. § 405(g)). Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (quoting *Jesurum v. Sec'y of the U.S. Dep't of Health & Human Srvcs.*, 48 F.3d 114, 117 (3d Cir. 1995)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. Under the substantial evidence standard, the district court is required to review the record as a whole. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999). If there is more than one rational interpretation of the evidence in the record, this Court must accept the conclusions

of the ALJ and affirm his decision. *See Izzo v. Comm'r of Soc. Sec.*, 186 F. Appx. 280, 284 (3d Cir. 2006). The Court is "not permitted to weigh the evidence or substitute [its] own conclusions for that of the fact-finder." *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Overall, the substantial evidence standard is a deferential standard of review, which requires deference to inferences drawn by the ALJ from the facts, if they are supported by substantial evidence. *Schaudeck*, 181 F.3d at 431.

Additionally, the Third Circuit requires an ALJ to "set forth the reasons for his decision," so that the district court can conduct meaningful judicial review. *See Burnett v. Comm'r*, 220 F.3d 112, 119 (3d Cir. 2000). However, the ALJ is not required to use any particular language or follow any specific formula, as long as sufficient details are provided to allow for meaningful judicial review. *Jones*, 364 F.3d at 505.

### III. ANALYSIS
#### A. The ALJ's Alleged Failure to Provide a Scientific Basis

Plaintiff alleges the ALJ failed to provide a scientific basis for his decision that, absent Plaintiff's substance abuse, he would not meet the disability standards established under § 1614a(3)(A) of the Social Security Act. (Br. 14) In light of the ALJ's lengthy analysis of the medical evidence and testimony, this argument must be rejected.

Under 20 CFR § 416.920(a), the ALJ must evaluate the severity of the claimant's mental impairment by assessing the degree to which the alleged impairment interferes with the claimant's ability to function independently. Furthermore, the ALJ must document his application of this technique by providing specific findings and appropriate rationale for each of the functional areas described in 20 CFR § 416.920. In the case at hand, the record indicates that the ALJ thoroughly considered all the medical evidence and based his findings on a reasonable, scientific basis. (*See* Tr. at 23-33). To this effect, he considered the medical opinions of three doctors, including Plaintiff's treating psychiatrist, a consultative examiner, and the State agency psychiatrist. (Tr. at 24-26, 30). Furthermore, the ALJ examined the medical evidence from Plaintiff's treatment at UMDNJ, the testimony by Plaintiff's father, and the opinion of the vocational expert. (Tr. at 27, 411-21). He noted that the Plaintiff, when drinking, demonstrated a marked restriction of the activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation. (Tr. at 28).

The ALJ also properly determined that Plaintiff's substance abuse was a contributing factor material to his disability. In doing so, the ALJ found that Plaintiff's allegation of disability in the absence of drug and/or alcohol abuse was not supported by the objective evidence in the record. (Tr. at 28-29). Furthermore, a substance abuse problem is relevant only if the ALJ finds that the claimant has another disability; it cannot count as a disability on its own. 20 CFR. § 416.935. Citing the record, the ALJ noted that Plaintiff had no physical impairments and that he can perform the exertional demands of heavy work. (Tr. at 28). Although Plaintiff testified under oath at his first hearing that

he had quit drinking years earlier, the record reflects the opposite. In February 2004, Plaintiff reported drinking every day after being taken to the emergency room for injuries sustained to his hand. (Tr. at 29, 142). In August 2005, Plaintiff told Dr. Cavanaugh that he still drinks alcohol to self-medicate his anxiety disorders. (Tr. at 154). More recently, in November 2008, Plaintiff was admitted to UMDNJ hospital in a highly intoxicated state after threatening suicide in front of his mother. (Tr. at 289). While there, Plaintiff described episodic binge drinking in a Therapeutic Activities Assessment Inquiry. (Tr. at 26, 289).

The ALJ also correctly evaluated the testimony of Plaintiff's treating psychiatrist, Dr. Lanez, and granted it no evidentiary weight under 20 C.F.R. § 416.927 because she failed to provide recent treatment records and incorrectly stated that he had been sober for several years. (Tr. at 30). In contrast, the ALJ properly relied upon the medical opinion of Dr. Kleinerman, a non-examining state agency medical consultant, who concluded that Plaintiff, while moderately limited in maintaining concentration and social functioning, retained the capacity for remembering, understanding, and carrying out instructions, for relating under conditions of reduced interpersonal contact, and for exercising judgment appropriately. (Tr. at 25, 29-30). Dr. Cavanaugh, the consultative examiner, reinforced Dr. Kleinerman's opinion and found that Plaintiff is capable of understanding and following simple instructions and directions, functioning semi-independently, and performing simple and complex tasks with supervision. (Tr. at 29-30). Although Plaintiff experiences various panic reactions in anticipation of stressful events, he is also able to ride his bike throughout his neighborhood, occasionally drive himself to buy beer or get a haircut, and talk with his neighbors on the porch. (Tr. at 24-25). Thus, the ALJ properly evaluated all of the evidence in the record and established a reasonable and scientific basis for his conclusion.

> **B.     The Commissioner's Alleged Failure to Carry the Burden of Proof at the Third and Fifth Step of the Sequential Disability Evaluation.**

Plaintiff also alleges that the Commissioner failed to carry the burden of proof at the third and fifth step of the sequential disability evaluation. (Pl. Br. at 22). Specifically, he argues that the Commissioner must demonstrate, by a preponderance of the evidence, that Plaintiff's substance abuse is a material factor relevant to the disability determination, and that he did not. (Pl Br. at 20). However, a close examination of both the record and case precedent refutes these contentions.

Plaintiff references statements from a question and answer session on the website of the Commissioner of Social Security to reinforce his claim that the burden of proof rests with the Commissioner in cases of simultaneous substance abuse and mental health disabilities. (Pl. Br. at 16-22). Plaintiff also points to various statements from the Hearing, Appeals and Litigation manual (HALLEX) in an attempt to force the Commissioner to provide expert psychiatric testimony to determine the materiality of his substance abuse. (Pl. Br. 20-22). While the Third Circuit has not directly addressed the issue of which side has the burden of establishing the materiality of substance abuse,

several Courts of Appeals have held that the burden rests with the plaintiff.  *Parra v. Astrue*, 481 F.3d 742, 748 (9th Cir. 2007); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001); *Pettit v. Apfel*, 218 F.3d 901, 903 (8th Cir. 2000).   Additionally, the instructions from HALLEX and the statements on the Commissioner's website which the Plaintiff references do not establish or imply which side bears the burden of proof.   Rather, they offer guidance as to what should be done when the ALJ is unable to separate the Plaintiff's substance abuse from his mental disabilities.   In the case at hand, the ALJ properly reviewed the totality of the evidence and determined that Plaintiff's substance abuse was a contributing factor material to his ailments, as required by HALLEX.

Plaintiff also alleges that the Commissioner did not carry the burden of proof at the fifth stage of the sequential evaluation because his construction of the hypothetical questions to the VE was "vague" and did not include all of Plaintiff's credibly established mental limitations.   (Pl. Br. at 22-23).   However, the record reveals that the ALJ did include all the specific limitations established by medical experts whose testimony he credited.   (Tr. at 30-32).   The VE then identified several jobs existing in significant numbers that the Plaintiff could perform, including hand packager, small products assembler, and garment sorter.   (Tr. at 31, 403-05).   Thus, the ALJ properly constructed his hypothetical questions at the fifth step of sequential disability evaluation.

## IV.   CONCLUSION

For the reasons stated above, the Commissioner's decision is **AFFIRMED**.   An appropriate order follows.

 /s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**